IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-01421-WYD

CARMEL RODRIGUEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for supplemental security income ["SSI"]. For the reasons stated below, this case is reversed and remanded for further fact finding.

I.     INTRODUCTION AND BACKGROUND

Plaintiff was born in July 1952. (Transcript ["Tr."]. 78.) She completed the ninth grade (*id*. 86) and worked in the relevant past as a machine operator, production worker and field laborer. (*Id*. 83-84, 99-106.) Plaintiff filed her application for SSI in November 2005. (*Id*. 78.) She alleges that she became disabled at age 53 in October 2005 because of "diabetes/thyroid/arthritis." (*Id.* 78, 82.)

Plaintiff's application was denied at the initial determination stage. (Tr. 67-69, 78.) She then sought administrative review. After a hearing on June 25, 2007 (*id.* 30-62), the ALJ concluded in a decision dated October 3, 2007, that Plaintiff was not

disabled within the meaning of the Act.  (*Id.* 22-29).  Plaintiff was *pro se* throughout this period of the case.

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 18, 2005, the date she applied for SSI.  (Tr. 24.)  At step two, the ALJ found that Plaintiff had severe impairments of diabetes mellitus and a history of general arthralgia (joint/muscle pain) of unknown etiology.  (*Id.*)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the Listings.  (*Id.*)

The ALJ then found that Plaintiff retained the residual functional capacity ["RFC"] to perform work requiring medium exertion.  (Tr. 25.)  At step four, the ALJ found that Plaintiff's RFC did not preclude her from performing her past relevant work as a production worker, as she performed that job at Monfort Beef.  (*Id.* 28.)  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from November 18, 2005, the date of her SSI application, through October 2, 2007, the date of the ALJ's decision.  (*Id.*)

After obtaining counsel, Plaintiff sought review before the Appeals Council.  The Appeals Council considered additional evidence (Tr. 162-269) and, in a decision dated December 14, 2009, found that there was no reason to change the ALJ's decision.  (*Id.* 8-18.)  That was the final administrative decision.

Plaintiff argues that the ALJ failed to properly determine and consider all of her severe impairments.  She also argues that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

II.     ANALYSIS

    A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

    B.     Whether the ALJ's Decision is Supported by Substantial Evidence

        1.     Whether the ALJ Failed to Properly Determine and Consider all of Plaintiff's Severe Impairments

Plaintiff argues that the ALJ erred by not considering a number of her impairments and determining whether those impairments were severe. "'An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities.'" *Lee v. Barnhart*, No.

03-7025, 2004 WL 2810224, at *1 (10th Cir. Dec. 8, 2004) (unpublished) (citing 20 C.F.R. §§ 404.1521(a); 416.921(a)).[1] "Only 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Id.* "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004)).

Even if an impairment is not severe, it does not become irrelevant." *Mushero v. Astrue*, No. 09-5164, 2010 WL 2530728, at *2 (10th Cir. June 24, 2010) (unpublished). "*All* medically determinable impairments, including non-severe impairments, must be taken into account in assessing a claimant's RFC. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)." *Id.* (emphasis in original); *see also Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009).

In the case at hand, the only impairments the ALJ considered were diabetes mellitus, which he found was "without nephropathy, retinopathy or neuropathy", hypothroidism which he found was well controlled with medication, and "a history of diffuse arthralgias of unknown etiology, which have been treated with medication with good results." (Tr. 24.) However, I agree with Plaintiff that the record reveals a number of other impairments which were not properly considered.

---

[1] Citation to this and other unpublished opinions in this Order are made because I find that they have persuasive value and will assist in the disposition of this case.

I first address the fact that some of the evidence of these impairments was in medical records produced in the first instance to the Appeals Council. I must determine whether that evidence is part of the record subject to review. "[T]he Appeals Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'" *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (quotations omitted). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Id*. "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record [the court] assess[es] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Id*.

By Order of December 14, 2009, the Appeals Council denied Plaintiff's request for review. In so doing, it stated that it considered the evidence noted in an Order it issued the same date. (Tr. 8-9, 11.) This evidence (Exhibits 11D and Exhibit 4F), which I find to be qualifying evidence, is thus part of the record that I review in evaluating whether the ALJ's decision was supported by substantial evidence. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (when the Appeals Council accepts additional evidence, that is "'an implicit determination [that it is] ... qualifying new evidence,' requiring the Appeals Council to consider it and this court to include it in our review of the ALJ's decision, without separate consideration of the requirements for qualification").

In a later decision dated March 26, 2010, the Appeals Council noted that Plaintiff submitted additional medical evidence "that, except for one clinic note dated in February 2009, duplicates evidence previously considered by the Council (Exhibit 4F, pages 94-102.)" (*Id.* 4.)  The Appeals Council stated that "[t]he clinic note for February 6, 2009 describes the claimant's condition nearly one and one half years after the period at issue addressed by the Administrative Law Judge's decision of October 3, 2007."  (*Id.*)  Thus, the Council found it was not new and material evidence, and also found that the case could not be reopened because the information was not received within the two year time limit.  I see no reason to disagree with those findings.  Accordingly, the clinic note for February 6, 2009, is not part of the record that will be considered.

I now turn to the medical evidence and what impairments are noted therein.  Plaintiff's primary treating source was Brush Medical Clinic.  I agree with Plaintiff that the ALJ denied Plaintiff's clam while lacking most of Plaintiff's medical records.  Indeed, the medical records before the ALJ ended January 2006 (Tr. 156), over a year before the hearing.  (Tr. 156.)  The ALJ erred because he did not develop the record as to this issue.

The Tenth Circuit had made clear that an "ALJ has a duty to fully and fairly develop the record as to material issues."  *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005) (social security hearing is "nonadversarial in nature, and the ALJ bears the responsibility for "ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised' in that hearing") (quotation omitted).

This includes the duty to obtain pertinent medical records. *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The duty is heightened when the plaintiff, as here, appears before the ALJ without counsel (Tr. 38). *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006); *see also Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987) ("The duty of inquiry takes on special urgency when the claimant has little education and is unrepresented by counsel."). Plaintiff testified at the hearing in a manner that showed she was receiving regular medical care (Tr. 45-49, 51, 55). Indeed, she testified to being hospitalized (*id*. 45, 50), which occurred in May 2007. (*Id.* 223-38.) That triggered the ALJ's duty to develop the record. The ALJ erred by failing to obtain this evidence.

Nevertheless, after Plaintiff obtained an attorney, that attorney submitted to the Appeals Council more than 100 pages of treatment records from Brush Medical Clinic for the period February 2006 through August 2008, as well as the hospital records. (Tr. 162-269.) That is now part of the record, as discussed previously. Plaintiff contends that it is undisputed from the record that she has the following severe medical impairments: diabetes, arthritis/gout, perhaps fibromyalgia, spinal disease, bilateral orthopedic foot deformities, trigger fingers and obesity. Individually and in combination, it is argued that they severely limit her ability to walk, sit, stand, lift, carry, finger, handle, and report to work within normal attendance standards.

I agree that the record, both before the ALJ and as presented to and considered by the Appeals Council, contained other impairments that the ALJ did not properly address. This requires a remand for proper consideration of this issue. For example,

the record reflects the following:  myopathy of the lower extremities with pain (Tr. 185-86, March and May 2006), "Flexor tenosynovotis of the third and fourth finger of the right hand, probably on the basis of diabetes" (*id.* 262, May 2006); "Trigger finger of fourth finger, left hand" (*id.* 261, June 2006); "myalgias, maybe fibromyalgia" (*id.* 184, July 2006); Fibromyalgia (*id.* 183, November 2006); "Spondylolisthesis of L5 on S1 with degenerative changes of the L5-S1" (Tr. 236, May 2007); "chronic pain" (*id.* 174, September 2007); bilateral foot pain, paresthesias, "[d]efinite diabetic neuropathy and "suspect some musculoskeletal causes" (*id.* 171, October 2007); "periarticular erosive changes in the first MJP joint. Consider gout" (*id.* 215, October 2007); complaining of paresthesias secondary to neuropathy, have initially treated her with Neurontin and discussed surgical corrections for her bunions (*id.* 213, October 2007); trigger finger on her right hand, third digit, she gets injections but it is acting up as she has not had one in a while, scheduled to have surgery on her feet (*id.* 167, December 2007); pain and swelling of Plaintiff's joints and wrists, "inflammatory arthropathy, most likely rheumatoid arthritis with pain in feet (*id.* 259, January 2008); trigger fingers (*id.* 257-58, February and March 2008), "history of paresthesias in both feet and occasionally in the hands, which is felt to be secondary to diabetic neuropathy", and "low back pain secondary to spondylolisthesis (*id.* 163, August 2008).  Plaintiff also testified, among other things, that her hands go numb and hurt, she has trigger fingers, her fingers and legs go numb, and she has a tingling feeling in her legs which the doctor said was part of diabetes.  (*Id.* 46.)

Based on the foregoing evidence, the ALJ's decision that Plaintiff was not suffering any neuropathy with her diabetes is also not supported by substantial evidence. (*See* Tr. 163, 171, 213.) Further compounding the legal error is the ALJ's finding that Plaintiff's arthralgia had been treated with good results. I agree with Plaintiff that "good results" is a legally meaningless term; here, a reasonable guess is that the ALJ was speculating Plaintiff was "fully recovered" or that the arthralgia was "no longer impairing." Given the foregoing evidence, this opinion does not appear to be supported. Plaintiff's continued treatment showed what the ALJ referred to as being arthralgia to instead be serious orthopedic impairments, well verified by radiology exams, including problems with Plaintiff's feet, back and fingers.[2]

Based on the foregoing, I find that this case must be remanded for the ALJ to properly determine the existence of all of Plaintiff's impairments from the record and consider whether they are severe, both individually and in combination. The ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to survive step two. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). The ALJ

---

[2] The Commissioner argues that the ALJ's decision was supported as Plaintiff's diabetes, hyperthyroidism, and pain responded to treatment during the time period relevant to this case. The Commissioner's application of evidence is, however, very selective, and the evidence as a whole does not support this argument. Indeed, while Plaintiff's diabetes condition varied, it generally was poorly or only fairly controlled. Specifically, the diabetes was under poor control in late 2005 and early 2006. (Tr. 156-57, 159, 188.) "Fair control" was achieved as of March 2006. (*Id.* 186). In November 2006 the diabetes was under "fairly good control but not excellent." (*Id.* 183.) In January 2007 Plaintiff's diabetes was under "fair control at best" and was still only "fair" in June 2007. (*Id.* 180, 175.) The records from late 2007 and 2008 continue to diagnose diabetes but do not state the level to which it was controlled, if any. (*See id.* at 165-66.) However, the records from late 2007 do note an additional complication–proteinuria. (*Id.* 167, 174.) The record also shows complaints of pain throughout the entire time period.

should also determine whether during the relevant time period Plaintiff was obese given her testimony about being overweight (Tr. 46) and, if she was, the ALJ must consider and evaluate the effects of obesity when evaluating disability. SSR 02-1P, 2000 WL 628049, at *1 (Sep. 12, 2002); *see also DeWitt v. Astrue*, No. 09-3250, 2010 WL 2181759, at *2 (10th Cir. June 2, 2010). Finally, the ALJ must properly assess Plaintiff's complaints of fatigue and dizziness.

        2.      <u>Whether the RFC was Supported by Substantial Evidence</u>

Since I find that the ALJ did not properly consider all of Plaintiff's impairments, the RFC must also be reassessed on remand. I also find other errors, however, with the ALJ's RFC analysis that must be rectified on remand.

"The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, No. 04-7076, 2005 WL 2065301, at *3 (10th Cir. Aug. 29, 2005) (unpublished). The ALJ found, as discussed previously, that Plaintiff has the RFC to perform the full range of medium work. He cited no medical evidence in support of that RFC. Indeed, he did not discuss in any detail the medical records or state what weight he assessed to any of the medical evidence. This was error. *See* SSR 96-2p, 1996 WL 374188, at *5 (1996) (the ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight that was given to a medical opinion); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).

Further, the ALJ did not cite what, if any, non-medical evidence he relied on in finding that Plaintiff could perform medium work. While the ALJ discussed evidence in connection with his finding that Plaintiff was not fully credible in regard to her pain and other subjective complaints, he did not discuss how this evidence supported the RFC finding. This is error, as it is axiomatic that all of the ALJ's required findings must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Indeed, SSR 96-8p directs that the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*, 1996 WL 374184, at *7 (July 2, 1996). The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved". *Id.*; *see also Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005) (remanding the case to the Commissioner where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC).

While the Commissioner points to forms filled out by Plaintiff in connection with her application as support for Plaintiff's ability to perform medium work, the forms do not ask what the claimant is capable of doing on a sustained basis, as required to hold a full time job. Further, the ALJ did not rely on such forms in his decision. Thus, this is

-11-

not a proper basis to affirm the AlJ's decision.  *Robinson*, 366 F.3d at 1084 (the ALJ's decision must be evaluated "based solely on the reasons given stated in the decision").

The ALJ also found based on Plaintiff's ability to perform medium work that she could perform her past relevant worker as a beef plant production worker.  The ALJ erred, however, at this step of the analysis as well.  At step four, the ALJ must make findings regarding the demands of Plaintiff's past work as well as findings regarding Plaintiff's ability to do that work given her RFC.  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ did not make specific findings regarding the demands of Plaintiff's work at Monfort Beef, or any of her past relevant work.  The ALJ also did not determine the proper DOT classification of that work.  As *Washington* notes, "[w]hile the claimant retains the burden of showing that [s]he is disabled at step four, the ALJ has a duty 'of inquiry and factual development.'"  *Id.* (quotation omitted).  Thus, "[t]he ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Id.* (quotation omitted).  The ALJ erred in not conducting this analysis and this must be addressed on remand.[3]

From Plaintiff's explanation of the job itself in the forms filled out for the Commissioner, Plaintiff's counsel states it appears likely the applicable DOT classification is Packager, Hand, 920.587-018, but that is merely a guess.  Plaintiff is correct that the Commissioner is prohibited from deciding claims on guess-work.  What is known from those forms is that Plaintiff's past relevant work likely required constant

---

[3] Again, the Commissioner points to the disability forms filled out by Plaintiff regarding her belief of the demands of her past work.  However, these are simply estimates by the Plaintiff.

standing, walking, fingering, handling, and lifting and carrying of up to 40 pounds. The ALJ did not point to any evidence in the record that Plaintiff would be able to meet those demands. Certainly Plaintiff's testimony does not support such a finding.[4] The Commissioner argues, however, that no doctors prescribed limitations or found Plaintiff to be disabled. But there is no evidence that any doctor was asked to do so. The Tenth Circuit has indicated that where no doctor has defined a claimant's capability for walking, standing or sitting, etc., or the level of exertion that the claimant can perform or the limitations, if any, on the claimant's movement or posture, the ALJ is "not in a position to make any RFC determination–there is no evidence to support such a finding." *Baker v. Barnhart*, No. 03-7041, 2003 WL 22905238, at *3 (10th Cir. 2003) (unpublished).[5]

The Commissioner also argues that when finding that Plaintiff could perform her past relevant work, the ALJ properly relied on Plaintiff's ability to perform work requiring medium exertion even after her alleged onset date. However, she could not perform that work, as the ALJ acknowledged that this was an unsuccessful work attempt that did

---

[4] Plaintiff stated in the Function Report she completed that she could walk only one block before needing to stop and rest and can walk up to four blocks total. (Tr. 93.) She said she could lift up to 28 pounds, and perform other physical activities such as housework for about an hour a day. (*Id.* 90-91, 93.) Further, she testified that while attempting to work during the disability period, her trigger fingers and pain in her hands were worse. (*Id.* 46-47). While the Commissioner argues that Plaintiff's trigger fingers were relieved with shots, this does not mean that this problem can be ignored. If the work would be impacted by Plaintiff's problems with her fingers, *i.e.*, if she continued to develop trigger fingers which would not allow her to work while it is being treated, this must be considered in assessing the RFC. Jobs that require frequent handling and fingering could certainly be impacted by this.

[5] The Commissioner cites *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) in support of its argument. *Kelley* is distinguishable, as in that case the physicians actually assessed the claimant's ability to work as well as his restrictions. That is not the situation here. The ALJ also relies on *Ray v. Bowen*, 865 F.2d 222, 224-25 (10th Cir. 1989). Similar to *Kelley*, the physicians in that case had provided reports regarding their opinion as to Plaintiff's condition, and one specifically opined as to Plaintiff's work capacity. Again, that is not the situation in this case.

not amount to substantial gainful activity. (Tr. 24.)   A claimant's prior unsuccessful attempt to work lends support to a finding that a claimant cannot work or of disability, not a finding that a claimant can work as the ALJ seemed to conclude in this case.  See *Hierstein v. Chater*, No. 96-6233, 1997 WL 158177, at *3 (10th Cir. April 2, 1997) (unpublished) (finding that "reliance on. . . abortive work efforts as evidence of *non* disability-suggested here by the ALJ's comment that even plaintiff's unsuccessful employment efforts 'reflect negatively upon the claimant's general credibility,' . . . is contrary to controlling law") (citing cases); *see also Washington*, 37 F.3d at 1441.

On remand, the ALJ must make the proper findings on this issue.  In so doing, the ALJ must keep in mind that RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  SSR 96-8p(1), 1996 WL 374184, at *1; *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing 20 C.F.R. § 416.945(c)).  A "regular and continuing basis" means "'8 hours a day, for 5 days a week, or an equivalent work schedule,' . . . and to 'respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting,. . . .'" *Haga*, 482 F.3d at 1208.  Thus, "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [s]he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job [s]he finds for a significant period of time.'" *Washington*, 37 F.3d at 1442 (emphasis in original) (quotation omitted).

I also note for purposes of remand that the ALJ's assessment of the evidence as to his credibility finding was very skewed. The ALJ selectively applied the evidence in the record documents, picking only findings which supported his conclusion and ignoring the findings which supported a finding of disability. This was error that must be addressed on remand. *See Carpenter*, 537 F.3d at 1265. For example, the ALJ found that Plaintiff has reported to treating medical professionals that her pain is relieved with medication. (Tr. 26, citing Exhibit 3F/2.) However, the record contains continuing complains of pain that do not appear to have been relieved by medication. (*See, e.g.,* Tr. 156-158, 162, 174.) The ALJ erred in ignoring this other evidence. Further, the fact that the ALJ found Plaintiff's muscle aches were of "unknown etiology" (*id.* 26) is not a sufficient reason to discount this pain which was diagnosed by the medical providers. Finally, I agree with Plaintiff that the ALJ erred in relying in part for his credibility finding on the fact that Plaintiff stopped working in 1998. (Tr. 28.) I can find no conceivable reason why this is relevant to Plaintiff's claim of disability in 2005, particularly since Plaintiff tried working during the period of alleged disability but was unsuccessful.

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly determine and consider whether all of Plaintiff's impairments were severe at step two, and did not consider the combination of all Plaintiff's impairments. I also find that the ALJ's RFC assessment and his decision at step four that Plaintiff can perform his past relevant work is not supported by substantial evidence. This case must be remanded to the

Agency for further fact finding on these and the other issues discussed in this Order. It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: September 28, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge